Filed 11/2/21  SwedelsonGottlieb v. Noland CA1/3
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| SWEDELSONGOTTLIEB,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>WILLIAM ALEXANDER NOLAND,<br><br>        Defendant and Respondent. | A156334, A156766<br><br>(City & County of San Francisco<br>Super. Ct. No. CGC 16-555026) |

        Plaintiff SwedelsonGottlieb sued its former employee, defendant William Alexander Noland, for misappropriation of trade secrets and breach of a nondisclosure agreement (NDA) after he left plaintiff's law firm to begin his own law practice.  The trial court entered judgment in favor of defendant and awarded defendant his attorney fees and costs upon finding that plaintiff pursued its trade secrets claim in "bad faith."  (Civ. Code, § 3426.4.)[1] Plaintiff argues that the court abused its discretion in awarding attorney fees and that it committed legal error by failing to give effect to enforceable provisions of the NDA.  We affirm.

---

[1]        Further section references are to the Civil Code unless indicated otherwise.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff is a law firm based in Los Angeles that services community and homeowner associations throughout California. Sandra Gottlieb is one of the firm's two founding partners.

Plaintiff possesses a library of forms, checklists, and templates for creating governing documents and agreements that its attorneys have developed over many years in representing homeowner association clients. The forms and templates contain notes to the drafter, embedded questions for clients to address when reviewing drafts, and instructions on how changes to certain items require corresponding changes elsewhere in the documents. The library is plaintiff's proprietary work product, and Gottlieb describes it as a "law firm in a box" that someone with experience in the homeowner association industry could use "from day one of a law practice."

In March 2008, plaintiff hired defendant as a transactional attorney. After several years, defendant relocated to San Francisco to establish a satellite office for plaintiff. In May 2016, defendant told Gottlieb he would not become an equity partner, intending instead to stay at the firm as a nonequity partner. However, defendant had already begun preparations to leave, including leasing office space.

In August 2016, defendant announced his resignation from the firm. During his last days of employment, defendant deleted any of plaintiff's documents that he could find on his home computer and mobile phone, moved any work in progress to an online storage folder, and deleted personal files, duplicate files, and the internet browsing history from his firm-issued laptop.

During defendant's exit interview, Gottlieb asked him to sign a "Partner Statement Regarding SwedelsonGottlieb Property and Trade Secrets" (partner statement). The partner statement required defendant to

2

declare under penalty of perjury that (1) he had "deleted from all electronic devices" any of plaintiff's email accounts, communications, attachments, and any firm communications with clients and prospective clients as of the date of his termination and (2) he did not have any "governing document form files," "contract form files," correspondence with the firm's clients, client files, or firm-related documents in his possession. Defendant told Gottlieb he would remove information from his personal devices and send her the signed partner statement. Gottlieb also asked defendant to relinquish any company documents and hardware, such as computers, cell phones, flash memory (thumb) drives, and hard drives if he had been using them. Defendant returned the firm laptop, but not a signed partner statement.

Defendant began operating his law practice in late August 2016. He obtained a few clients "within the first few days" of opening, and by the end of October 2016 had retained 23 of plaintiff's former clients.

After defendant's departure from the firm, Gottlieb became concerned about defendant's failure to sign the partner statement. Plaintiff's controller, Aram Homampour, checked the firm's server and information governance portal and found several emails with attachments that defendant had sent to himself and then deleted.

In October 2016, plaintiff filed a complaint asserting 11 causes of action against defendant including misappropriation of trade secrets under the California Uniform Trade Secret Act (UTSA) (§ 3426 et seq.), breach of contract, and injunctive relief.[2] The complaint defined plaintiff's trade secret

---

[2]    Plaintiff also alleged causes of action for intentional interference with prospective economic advantage; intentional interference with contractual relations; violation of Business and Professions Code section 17200; breach of fiduciary duty; violation of Labor Code section 2860; breach of duty of loyalty; conversion; and accounting.

as "consisting of proprietary forms, business plans, work processes and procedures, customer and client lists and information . . . including, but not limited to, the names, addresses, non-published mobile telephone numbers and email addresses for board members and managing agents, other contact information of potential and actual board members, association staff and/or management, personal information about their businesses, family information . . . how the board and management prefer the work product to be sent or delivered to them, fees and hourly rates charged, client data bases, and contract terms[.]"

Plaintiff alleged, on information and belief, that "prior to the cessation of his employment with Plaintiff and/or sometime thereafter," defendant "contacted and solicited Plaintiff's existing clients and management contacts, asking them to cancel their existing contracts and/or relationships with Plaintiff, and enter into new contracts with him." Plaintiff further alleged that defendant "misappropriated Plaintiff's Confidential Information by downloading and/or copying it, leaving Plaintiff's employment, working for himself in competition with Plaintiff, soliciting business from those clients on Plaintiff's customer and client lists, and attempting to persuade and importune them to become his clients."

The complaint attached a copy of the parties' NDA. Paragraph 3.a ("Non-Competition During Term of Employment") prohibited defendant from engaging in any business in competition with the firm during his employment. Paragraph 4.c ("Unfair Competition After Termination of Employment") provided, in relevant part, that defendant was prohibited for a period of one year "or for that period of time allowed by law immediately following" employment with plaintiff from soliciting any of the firm's customers or clients with whom defendant had contact during his

4

employment. Paragraph 7 ("Severability") provided that if any provision of the NDA was found to be unenforceable, it would be "deemed deleted" and would not affect the remainder of the NDA.

In December 2016, plaintiff filed a first amended complaint (FAC) asserting two causes of action for misappropriation of trade secrets and breach of contract. The FAC provided the same description of plaintiff's alleged trade secrets and the same allegations of misappropriation as in the original complaint.[3]

In April 2017, plaintiff served its Code of Civil Procedure section 2019.210 trade secret statement, which provided substantially the same description as in plaintiff's complaints and concluded: "In short, said trade secrets include, but are not limited to, non-public client contact information and are contained in Plaintiff's data base, Plaintiff's forms, and Plaintiff's emails." A year later, however, on the eve of trial, plaintiff filed a trial brief identifying the trade secret at issue as a " 'compilation' " of its work product documents and forms contained in trial exhibits 201–525. Acknowledging the exhibits contained public domain elements, plaintiff argued the compilation "[t]aken as a whole" would provide someone starting a new law practice "a competitive advantage, i.e., 'a law firm in a box.' "

A bench trial was held over the course of several days in April, May, and June 2018. We summarize the relevant testimony.

Plaintiff's computer forensics expert Matthew Albee testified that in the days leading up to defendant's departure from the firm, two external devices—a flash memory drive by Emtec named "Hufflepuff" and an external

---

[3]    During trial, plaintiff was granted leave to file a second amended complaint, which added a prayer for injunctive relief on the breach of contract claim.

hard drive by Western Digital named "My Passport"—had been attached to the laptop and used to copy files in bulk. Comparing the contents of the firm laptop used by defendant with a list of "hash matches"[4] of files on defendant's personal laptop and Hufflepuff drive, Albee identified the documents in trial exhibits 201–525 as those that were found on defendant's personal devices.

Gottlieb testified about several exhibits among plaintiff's trade secret compilation, explaining the documents and their usefulness to plaintiff. She described some of the exhibits as the firm's "secret" or "internal" forms and templates, while others were final documents prepared from templates or documents created by third parties. According to Gottlieb, the firm's modifiable forms "never leave[]" the office, and she and Homampour stated it was the firm's policy that documents should be saved on the firm's secured and password-protected server rather than on computer hard drives. Gottlieb admitted she had no proof that defendant was using any of the firm's forms with his clients, but she was "concern[ed] he would use them in the future."

Defendant admitted he had used external devices as well as a home desktop computer during his employment with plaintiff, but upon leaving the firm he had deleted all of plaintiff's materials that he could find from his personal electronic devices, including his home laptop, home desktop computer, and cell phone. He also deleted personal files, old drafts, and duplicate files from the firm-issued laptop, and moved other files to an online storage folder. Defendant testified that he was unable to locate the alleged

---

[4]    As Albee explained, his forensic procedure involved "hashing" the contents of the firm laptop's hard drive by using a mathematical algorithm to create a 32 digit "fingerprint identifying [each file] against any other file in existence."

trade secret documents on his old home desktop computer and that file paths for the documents did not exist.

Defendant was questioned regarding each and every individual exhibit claimed as plaintiff's trade secrets. He identified many items with no apparent trade secret value, e.g., a flight receipt; a coloring book; publicly recorded documents; articles he wrote for third party publications; an application he submitted to a third party organization; and "a picture of a sad face." He also identified many documents, including plaintiff's work product, that he believed were not plaintiff's trade secrets because they were either created by or disclosed to third parties, or contained public information. Defendant testified that plaintiff's contracts and governing documents in modifiable form were "frequently" and "on multiple occasions" sent to clients "and other parties." He denied having solicited any of plaintiff's clients for his new practice.

Plaintiff's former employee Mary Peterson offered testimony that after leaving her employment with plaintiff, she was never asked to remove and she never deleted any of plaintiff's information, emails, or contact information from her computer. Additionally, plaintiff did not disconnect Peterson from one of its servers after her resignation, though she herself eventually disconnected her online storage folder connection with plaintiff.

The trial court issued a detailed, 18-page statement of decision finding in favor of defendant. The court rejected the claim for misappropriation of trade secrets, finding that plaintiff had failed to establish that trial exhibits 201–525 constituted a trade secret under UTSA.[5] According to the court,

---

[5] UTSA defines a trade secret as "information, including a formula, pattern, compilation, program, device, method, technique, or process that: [¶] (1) Derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain

plaintiff "did not attempt to demonstrate how" the set of documents in trial exhibits 201–525 "constitutes a protectable compilation or combination of information with independent economic value due to secrecy from competitors." The court noted that Gottlieb testified only as to "the content of ten (10) of the 325 documents," and that plaintiff presented no other evidence regarding the content of the remaining 315 documents. In the court's words, "the documents and forms appear only to reflect an *ad hoc* accumulation of unrelated attorney work-product, personal documents, and public information that Defendant had personally accessed, used or created on his personal electronic devices in the regular course of his work during his eight-year term of employment by Plaintiff."

The trial court further found that the documents at issue were not kept secret because they were shared with clients and third parties, including public agencies, homeowner association board members and community managers, vendors, contractors, and third party counsel. Plaintiff also failed to demonstrate that it employed reasonable and adequate measures to keep the documents secret. Specifically, plaintiff did not maintain detailed written policies or procedures to identify and protect its trade secret information (despite other policies expressly contemplating that employees would save documents and forms on their personal electronic devices), and former employees remained in possession of firm-issued computers and client data.

The trial court also determined that plaintiff had failed to demonstrate misappropriation.[6] The court found that defendant was authorized to use

economic value from its disclosure or use; and [¶] (2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." (§ 3426.1, subd. (d).)

[6] "Misappropriation" is defined, in relevant part, as the acquisition of another's trade secret by a person who knows or has reason to know that the

and possess plaintiff's documents and forms while he was working for plaintiff, and that the vast majority of the claimed trade secret documents was work product from 2010 through 2012—a period during which defendant had not been issued a firm laptop. The court further found that plaintiff had presented no direct or substantial evidence showing defendant's actual or threatened use or disclosure of any of the documents and forms since his departure from the firm.

The trial court noted that "[d]ue to discovery limitations, no documents were ever retrieved from defendant's electronic devices."[7] However, the court found that defendant was still an employee when work product materials were placed on his personal devices, and, consistent with defendant's testimony, most of the claimed trade secret documents traced to defendant's devices had been deleted.

Finally, the trial court found no causal link between the alleged misappropriation and any alleged harm to plaintiff. Plaintiff had not demonstrated how defendant's possession of any of its claimed trade secret

---

trade secret was acquired by improper means; or use of another's trade secret without express or implied consent by a person who either used improper means to acquire it or knew or had reason to know that his or her knowledge of the trade secret was derived from improper means or acquisition, and was acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use. (§ 3426.1, subd. (b).)

[7] This statement appears to be in reference to plaintiff's unsuccessful attempts, after the continuance of the initial trial date, to obtain discovery of electronically stored information (ESI) on defendant's personal devices. At an April 2018 hearing on plaintiff's objections to the discovery referee's recommendations, the trial court remarked that it was "mind-boggling" the ESI discovery was being sought so late in the case, as it was "obvious" and "competition case 101" that a former employer would want to know what information was taken and deleted by a former employee. Plaintiff raises no claim of error in the discovery rulings below.

9

documents, either individually or collectively, resulted in loss of current or prospective clients or business advantages over competitors.

Regarding the breach of contract cause of action, the trial court found that paragraph 4 of the NDA was void and unenforceable under Business and Professions Code section 16600 as an illegal restraint of trade. The court also found that defendant had not violated paragraph 3 because he was not prohibited from making preparations for his solo practice during his employment with plaintiff, and plaintiff "offered no testimony or evidence" that defendant had solicited any of plaintiff's clients to terminate their relationship with plaintiff. Furthermore, plaintiff "stipulated on the record that it was not seeking any damages based upon client solicitation."

The trial court entered judgment in defendant's favor. Defendant filed a postjudgment motion for attorney fees and costs under section 3426.4. The trial court granted the motion based on the following findings: (1) plaintiff brought its claim for misappropriation of trade secrets in bad faith; (2) the claim "was objectively specious for the reasons set forth in the Statement of Decision"; and (3) plaintiff acted in subjective bad faith because it "did not prove [that] any claimed trade secret documents met the requisite trade secret definition under the [UTSA]"; it "did not provide any evidence to show that it had attempted to keep secret many of the documents that it claimed were trade secret"; and it "did not provide any evidence to show that any of the alleged trade secret information had been used by Defendant to improperly solicit clients." The court awarded defendant $51,477.44 in costs and $714,382.50 in attorney fees.

Plaintiff timely filed notices of appeal from the judgment and the postjudgment order awarding attorney fees. The appeals were consolidated for briefing, oral argument, and decision.

10

## A.    Section 3426.4 Attorney Fees

A trial court may award reasonable attorney fees and costs to the prevailing defendant in a UTSA action where "a claim of misappropriation is made in bad faith[.]"  (§ 3426.4.)  Although the statute does not define "bad faith," a line of cases beginning with *Gemini Aluminum Corp. v. California Custom Shapes, Inc.* (2002) 95 Cal.App.4th 1249 (*Gemini*) holds that " 'bad faith' for purposes of section 3426.4 requires objective speciousness of the plaintiff's claim, as opposed to frivolousness, and its subjective bad faith in bringing or maintaining the claim."  (*Gemini*, at p. 1262; see *SASCO v. Rosendin Electric, Inc.* (2012) 207 Cal.App.4th 837, 845–846 (*SASCO*); *FLIR Systems, Inc. v. Parrish* (2009) 174 Cal.App.4th 1270, 1275 (*FLIR*); *Yield Dynamics, Inc. v. TEA Systems Corp.* (2007) 154 Cal.App.4th 547, 578 (*Yield Dynamics*).)  "Objective speciousness exists where the action superficially appears to have merit but there is a complete lack of evidence to support the claim."  (*FLIR*, at p. 1276, relying on *Gemini*, at p. 1261.)

Here, the trial court specifically found that plaintiff "did not attempt to demonstrate" how trial exhibits 201–525 constituted a protectable trade secret compilation and that plaintiff presented "[n]o evidence—direct or circumstantial" to prove defendant's postemployment use or disclosure of plaintiff's documents and forms.  These findings, plus plaintiff's stipulation "on the record that it was not seeking any damages based upon client solicitation," supported the objective speciousness of plaintiff's claim.  (See *SASCO*, *supra*, 207 Cal.App.4th at pp. 848–849 [claim was objectively specious due to absence of evidence of misappropriation].)

In seeking reversal of the attorney fee award, plaintiff contends we are not bound by *Gemini* and its progeny.  Plaintiff urges that we reject *Gemini*'s

definition of objective speciousness and adopt the more demanding standard of "frivolousness." (E.g., Code Civ. Proc., § 128.5, subd. (b)(2) ["totally and completely without merit"]; *In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 650 [frivolous appeals].) We decline plaintiff's invitation. As *Gemini* observed, "section 3426.4 does not contain the word 'frivolous.' Moreover, in enacting section 3426.4 the Legislature was concerned with curbing 'specious' actions for misappropriation of trade secrets, and such actions may superficially appear to have merit." (*Gemini*, *supra*, 95 Cal.App.4th at p. 1262.)

Plaintiff nevertheless contends the "objective speciousness" standard is too vague and leads to the award of attorney fees based on hindsight, as demonstrated here by the trial court's reliance on "the reasons set forth in the Statement of Decision" to support its finding of objective speciousness. Without a frivolousness standard, plaintiffs argue, litigants claiming trade secrets misappropriation "will never know until the case has gone to trial whether it is objectively specious." We are not persuaded. A full trial on the merits is not required for a litigant to know whether there is a complete lack of evidence supporting its claim for misappropriation of trade secrets. (*FLIR*, *supra*, 174 Cal.App.4th at p. 1276.)

Finally, plaintiff argues the trial court conflated objective speciousness with plaintiff's mere loss on the merits. We disagree. As recounted above, the fee award was premised on the court's particularized findings that plaintiff's trade secret misappropriation claim suffered more fundamentally from a lack of critical evidence on the elements of the claim.

**B.  Other Claimed Errors**

Plaintiff contends the trial court made several other errors in finding objective speciousness. We review an award of section 3426.4 attorney fees

for abuse of discretion, accepting the version of facts that supports the trial court's determination and indulging in every inference that favors its findings. (*Gemini*, *supra*, 95 Cal.App.4th at pp. 1262–1263.)

### 1. Description of Gottlieb's Testimony

Plaintiff first argues the trial court "erred as a matter of law" in finding plaintiff did not present evidence about the contents of all but 10 of the documents in trial exhibits 201–525. According to plaintiff, Gottlieb testified not only about the 10 identified exhibits, but also about the firm's checklists and color-coded templates containing notes to the drafter and embedded questions for clients.

Plaintiff cites no authority indicating the trial court's description of Gottlieb's testimony constituted legal error.[8] Indeed, the trial court was not required to make such evidentiary findings, only ultimate findings of fact on principal controverted issues. (*Yield Dynamics*, *supra*, 154 Cal.App.4th at p. 559, citing Code Civ. Proc., § 632.) Here, the principal controverted issue was whether trial exhibits 201–525 constituted a protectable trade secret compilation.

On that score, the trial court found that plaintiff did not even "attempt to demonstrate how" trial exhibits 201–525 were integrated in a unique way to create a discrete and protectable trade secret. (See *Altavion, Inc. v. Konica Minolta Systems Laboratory, Inc.* (2014) 226 Cal.App.4th 26, 48 (*Altavion*) [trade secret can include "effective, successful and valuable integration" of public domain elements]; *3M v. Pribyl* (7th Cir. 2001) 259 F.3d 587, 595–596 [trade secret exists where "unique combination" of public domain elements affords competitive advantage and is secret].) Rather, the court found that

---

[8] Notably, plaintiff did not object to the same description of Gottlieb's testimony in the proposed statement of decision.

trial exhibits 201–525 were an ad hoc collection of defendant's work product and personal and public documents—a finding that was supported by substantial evidence as recounted above. Plaintiff does not explain how a fuller description of Gottlieb's testimony that included a few more exhibits would have compelled a contrary finding as to the objective speciousness of the trade secrets compilation claim.

### 2. *Secrecy of Plaintiff's Modifiable Documents*

Plaintiff next argues the trial court erred as a matter of law in concluding that secrecy was not maintained as to plaintiff's forms, checklists, and templates. According to plaintiff, the evidence at trial showed that only finished documents—not the modifiable versions used to create them—were transmitted to clients and third parties.

"Secrecy is an essential characteristic of information that is protectable as a trade secret." (*Altavion*, *supra*, 226 Cal.App.4th at p. 57.) In finding that secrecy was lacking, the trial court referred to the "documents at issue" and did not limit its finding to finished documents. The court also noted that plaintiff's "*forms* [were] distributed to [homeowner association] Boards, homeowners, and managers. For example in the case of the Green Street Homeowners' Association, the *modifiable* version of Plaintiff's [homeowner association] governing document form was, upon request, provided to the client." (Italics added.) These findings were supported by substantial evidence, including defendant's testimony that contracts and governing documents in modifiable form were "frequently sent out to clients and other parties."

Plaintiff attempts to minimize defendant's evidence regarding the modifiable documents sent to clients. Specifically, plaintiff argues that defendant could identify only one such instance (Green Street Homeowners

14

Association) in which the client was sent a document containing a disclaimer restricting the document's use or distribution.  This argument ignores the applicable standard of review.  (*Ewald v. Nationstar Mortgage, LLC* (2017) 13 Cal.App.5th 947, 948 [failure to tailor argument to applicable standard of appellate review is concession of lack of merit].)  On review for abuse of discretion, we accept the version of facts that supports the trial court's determination and indulge in every inference that favors its findings.  (*Gemini*, *supra*, 95 Cal.App.4th at pp. 1262–1263.)  Thus, we infer the trial court credited defendant's testimony that modifiable documents were "frequently" sent to plaintiff's clients and other parties, with Green Street Homeowners Association constituting only one example of this practice.  Indulging all inferences in favor of the trial court's findings, we conclude there was substantial evidence supporting its conclusion that secrecy was lacking as to the modifiable documents.

### 3.  *Attorney Work Product Protection*

Plaintiff takes issue with the trial court's conclusion that work product transmitted to plaintiff's clients is no longer owned by the law firm.  Citing *Tucker Ellis LLP v. Superior Court* (2017) 12 Cal.App.5th 1233, plaintiff contends the firm holds the "privilege" as to its work product, even if the firm is no longer in possession of the documents or their contents have been communicated to clients.  But even if we accept that legal conclusion, plaintiff provides no meaningful argument or authority indicating that attorney work product protection necessarily overlaps with secrecy for purposes of UTSA.  Since we are not required to develop plaintiff's arguments, we treat the contention as waived.  (See *Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956 (*Cahill*).)  In any event, as discussed, substantial

evidence supports the conclusion that the modifiable forms were sent not only to clients but to third parties.

### 4. Subjective Bad Faith

Section 3426.4 also requires a showing of the plaintiff's subjective bad faith in bringing or maintaining a UTSA claim. (*Gemini, supra*, 95 Cal.App.4th at p. 1262.) "Subjective bad faith under section 3426.4 means the action was commenced or continued for an improper purpose, such as harassment, delay, or to thwart competition. [Citations.] The absence of evidence alone, even after discovery, does not support a finding of subjective bad faith." (*SASCO, supra*, 207 Cal.App.4th at p. 847.) A finding of subjective bad faith under section 3426.4 must be supported by evidence that plaintiff knowingly and intentionally prosecuted a specious claim. (*Gemini, supra*, 95 Cal.App.4th at p. 1262.)

Plaintiff contends the trial court's finding of subjective bad faith was "defective as a matter of law" because the court erroneously relied on a hindsight view of the case's merits rather than evidence of plaintiff's motive. Plaintiff then proceeds to outline, in considerable detail, evidence in the record supporting the reasonableness of its beliefs that trial exhibits 201–525 were protectable trade secrets, that the secrecy of these documents were adequately protected, and that defendant improperly acquired, used, and benefited from them.

These contentions misapprehend the applicable legal standard as well as the standard of review. As explained in *Cypress Semiconductor Corp. v. Maxim Integrated Products, Inc.* (2015) 236 Cal.App.4th 243 (*Cypress Semiconductor*), a plaintiff's " 'subjective belief in the merits of its case' " is immaterial, "because the test is not what the plaintiff believed about its objectively specious claim, but for what *purpose* it pursued such a claim.

16

[Citations.] If the court finds that a claim is objectively specious, and that the plaintiff made it for an improper purpose, there is no further requirement that the court also find a lack of 'subjective belief in the merits of its case.' " (*Id.* at p. 267.) Likewise, because the applicable standard of review requires us to accept the version of facts that supports the trial court's determinations (*Gemini, supra*, 95 Cal.App.4th at pp. 1262–1263), it is immaterial that plaintiff can point to evidence suggesting its good faith belief, so long as substantial evidence supports the trial court's finding of subjective bad faith. We conclude there was ample evidence to support such a finding.

"The timing of the action may raise an inference of bad faith. [Citation.] Similar inferences may be made where the plaintiff proceeds to trial after the action's fatal shortcomings are revealed by opposing counsel." (*FLIR, supra*, 174 Cal.App.4th at p. 1278.) Here, plaintiff filed suit within weeks of defendant opening his own law practice, claiming he had illegally solicited plaintiff's clients using confidential client information—a theory that, as far as we can tell from the record, was never shown to have merit in this case. (See *Courtesy Temp. Serv. v. Camacho* (1990) 222 Cal.App.3d 1278 [criteria for trade secret protection of client lists].) Though alleging its entitlement to injunctive relief, plaintiff never sought a preliminary injunction to stop the alleged ongoing client solicitations. (See *FLIR*, at p. 1280 [subjective bad faith where plaintiff never sought order compelling defendants to return claimed trade secrets].) Furthermore, the record indicates that plaintiff was made aware of the lack of merit in its client solicitation theory in or around September 2017 (more than six months before trial began).[9]

---

[9] Specifically, in September 2017, defendant moved to quash subpoenas duces tecum served on defendant's clients. In support, defendant submitted

17

Plaintiff nevertheless continued to prosecute its claim, shifting its theory to misappropriation of its library of documents and forms even though plaintiff never had proof of defendant's actual or threatened use of those documents, as Gottlieb later admitted at trial. (*FLIR*, *supra*, 174 Cal.App.4th at p. 1279 [UTSA requires an actual or threatened misappropriation].) Moreover, plaintiff did not seek ESI discovery regarding the contents of defendant's personal devices until after the initial trial date was continued— a "mind-boggling" delay in the view of the trial court—and plaintiff never sought preliminary injunctive relief against defendant's use of plaintiff's documents and forms. (*FLIR*, at p. 1280.) Viewing this record favorably to the judgment, we conclude substantial evidence supported the conclusion that plaintiff brought and maintained its flawed trade secret claim despite knowledge of its many shortcomings. (*FLIR*, at p. 1278.)

The record also supports an implied finding that plaintiff's motive in bringing and maintaining the action was for the improper purpose of pursuing an "inevitable disclosure" theory against defendant. (*FLIR*, *supra*, 174 Cal.App.4th at pp. 1278–1280 [affirming bad faith finding based on plaintiff's reliance on inevitable disclosure theory].) The inevitable disclosure doctrine, by which a plaintiff may prove a claim of trade secret misappropriation by demonstrating that a defendant's new employment will

---

several declarations from board members and community managers for the homeowner association clients denying that he had solicited them either before or after he left plaintiff's employment. Although defendant's motion was denied, plaintiff ultimately did not take the depositions of representatives of the homeowner associations, citing business reasons. Indulging all inferences in defendant's favor, the trial court could reasonably have concluded that defendant's declarations made plaintiff aware of the fatal shortcomings of its client solicitation theory. (*FLIR*, *supra*, 174 Cal.App.4th at p. 1278.)

inevitably lead the defendant to rely on the plaintiff's trade secrets, has been rejected in California as creating "an after-the-fact covenant not to compete." (*Whyte v. Schlage Lock Co.* (2002) 101 Cal.App.4th 1443, 1447.) As one court recognized, speculation that an employee must have taken trade secrets based on success in new employment does not constitute evidence of misappropriation. (*SASCO*, *supra*, 207 Cal.App.4th at pp. 848–849.) Plaintiff's consistent reliance on a theory of inevitable disclosure, from its pleadings through trial, supported a finding that plaintiff prosecuted this action with an improper, anticompetitive purpose. (*SASCO*, *supra*, 207 Cal.App.4th at p. 847 [thwarting competition is improper purpose under section 3426.4].)[10]

In sum, we conclude the trial court did not abuse its discretion in awarding attorney fees under section 3426.4.

## C.     Breach of the NDA

Plaintiff argues the trial court erred in finding in favor of defendant on the breach of contract claim because, notwithstanding the void and severable provisions, the court "ignore[d] the other promises contained in the NDA" such as paragraph 2, which required defendant to return all of plaintiff's property, and paragraph 6, which required defendant to maintain confidentiality as to all information learned by him concerning plaintiff's operation and customers.

We are not persuaded. Plaintiff provides no cogent argument or citation to the record demonstrating that defendant failed to maintain the confidentiality of plaintiff's information or return plaintiff's property. Thus,

---

[10]     Plaintiff's reliance on the inevitable disclosure doctrine also provides support for the objective speciousness of its claim. (See *Cypress Semiconductor*, *supra*, 236 Cal.App.4th at p. 268 [theory based on inevitable disclosure doctrine did not state grounds for relief under California law].)

we treat the contentions as waived. (*Cahill*, *supra*, 194 Cal.App.4th at p. 956.) Indeed, the evidence showed, quite to the contrary, that defendant deleted and never used plaintiff's documents and forms after his departure from the firm.

Plaintiff also provides no argument or analysis as to how it was damaged by defendant's alleged breaches of NDA paragraphs 2 or 6. (See *Bushell v. JPMorgan Chase Bank, N.A.* (2013) 220 Cal.App.4th 915, 921 [elements of breach of contract include damages resulting from breach].) As discussed, the trial court found that plaintiff presented no evidence of any losses of current or prospective clients or business advantages resulting from defendant's alleged possession of plaintiff's documents and forms.

## DISPOSITION

The judgment is affirmed. Defendant is entitled to his costs on appeal.

_____
Fujisaki, Acting P. J.

WE CONCUR:


_____
Petrou, J.


_____
Chou, J.[*]

A156334/*SwedelsonGottlieb v. Noland*

_____

[*] Judge of the Superior Court of San Mateo County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

21