[No. G045229. Fourth Dist., Div. Three. July 11, 2012.]

SASCO, Plaintiff and Appellant, v.
ROSENDIN ELECTRIC, INC., et al., Defendants and Respondents.

## COUNSEL

Lewis Brisbois Bisgaard & Smith, Jeffry A. Miller, Daniel C. DeCarlo, Thomas J. Speiss III and Matthey B. Stucky for Plaintiff and Appellant.

Miller, Randall A. Miller, Howard M. Fields and Linda L. Miller for Defendants and Respondents.

## OPINION

**IKOLA, J.**—Plaintiff SASCO appeals a postjudgment order awarding defendants[1] $484,943.46 in attorney fees and costs pursuant to Civil Code section 3426.4 (section 3426.4). We affirm. The trial court applied the correct interpretation of section 3426.4 and did not abuse its discretion in finding "bad faith" on the part of SASCO in bringing its trade secret misappropriation claim against defendants.

### FACTS

*Allegations in Complaint*

SASCO filed its complaint on July 31, 2008. We briefly describe the factual allegations contained therein, specifying where SASCO made allegations based upon information and belief.

SASCO and defendant Rosendin are licensed electrical contractors doing business in the State of California. Individual defendants Fitzsimmons, Thompson, and Woodworth worked for SASCO in senior management positions until the fall of 2006. Individual defendants each signed nondisclosure agreements with SASCO. Each of the individual defendants resigned from SASCO and joined Rosendin on different dates in October and November 2006.

Woodworth was aware of an opportunity being pursued by SASCO known as the Verizon Tustin Project. Woodworth "supported the effort by SASCO to pursue the project under its normal estimating process. As such, he followed the process through to the bid. Pursuant to the bid, he supported the sales effort to acquire the project. SASCO reasonably believed that it had procured the job and 'booked' the job into its business plan." "SASCO is informed and believes . . . [that] WOODWORTH contacted the Verizon Tustin MSC

---

[1] Defendants include Rosendin Electric, Inc. (Rosendin), Doug Fitzsimmons, Cliff Thompson, and Jon Woodworth. We will refer to the latter three as the "individual defendants."

general contractor and encouraged them to ignore the SASCO bid and their verbal commitment and to award the job to ROSENDIN based on a bid that undermined the SASCO bid, with which WOODWORTH was intimately familiar. SASCO is informed and believes . . . that [defendants] surreptitiously used SASCO's bid number and improperly submitted their own bid. As a result . . . the contract was wrongly awarded to ROSENDIN."

"SASCO is informed and believes . . . that [individual defendants] also took confidential, proprietary, and trade secret information including SASCO's unique estimating and job cost systems to ROSENDIN. Said systems are unique in the construction industry in that the estimating system provides the basis for the job cost system and the monitoring systems that allow SASCO to maintain its competitive edge." "SASCO is informed and believes . . . that [defendants] surreptitiously accessed, copied, and misappropriated SASCO's estimating and job cost systems and applied them at Rosendin. Access to SASCO's systems was limited to senior management."

Based on these alleged facts, SASCO set forth five causes of action: (1) misappropriation of trade secrets; (2) intentional interference with prospective economic advantage; (3) unfair business practices; (4) breach of contract; and (5) breach of the implied covenant of good faith and fair dealing.

*Discovery*

SASCO identified (pursuant to Code of Civ. Proc., § 2019.210) the trade secret at issue as "a proprietary computer program which creates monthly construction project reports, which include, but are not limited to, past and projected labor and materials, project change history, variances from schedules, job performance reports, and labor performed by area and task code. These reports estimate costs and manage projects by monitoring labor and material variances from schedules and make according adjustments, on this and other projects."[2]

The parties engaged in fierce discovery battles over the course of the litigation, with both sides apparently expressing reluctance to comply with the other's requests. The court entered at least three orders pertaining to the parties' discovery disputes. Fortunately, it is unnecessary for purposes of this

---

[2] SASCO asserts in its brief that it provided more information under seal to the trial court about its claimed trade secrets, but the sealed documents are not included in the record submitted by SASCO on appeal. SASCO offers to move to augment the record should this court deem it necessary. We decline SASCO's invitation to speculate as to whether unknown materials SASCO chose not to submit with the record might affect our consideration of the appeal. Instead, we decide the appeal based on the record that has been put before us by the parties.

appeal to rehash the history of these skirmishes. It is sufficient to note that the trial court had a ringside seat and could therefore take into account the parties' respective discovery conduct in ruling on the motion for attorney fees at issue in this appeal (in particular, in ruling on whether SASCO had subjective bad faith in bringing its trade secret misappropriation claim, a finding that is not disputed by SASCO in this appeal).

*Dismissal*

On May 1, 2009, defendants filed a motion for summary judgment. SASCO obtained continuances of the summary judgment hearing to conduct additional discovery. On July 7, 2010, SASCO substituted in new counsel. On October 20, 2010, SASCO voluntarily dismissed the action without having filed an opposition to the motion for summary judgment.

*Motion for Attorney Fees and Costs*

Defendants then filed a motion for attorney fees and costs pursuant to section 3426.4. Defendants argued (1) there was no trade secret (the purported trade secret was an "off the shelf" computer program); (2) there was no evidence of misappropriation of the trade secret; and (3) the action was filed for the improper purpose of harassing a business competitor and ex-employees. Given the limited scope of this appeal, we focus on evidentiary submissions pertaining to whether there was a lack of evidence of trade secret misappropriation.[3]

Defendants contended this case "was objectively frivolous because there was never one shred of evidence to support the claim of misappropriation of trade secrets." Besides simply pointing to the absence of evidence in the record, defendants also submitted evidence tending to show SASCO's lack of evidence. First, SASCO chief executive officer Larry Smead testified at his deposition that he did not have any actual evidence that the individual defendants "took any Excel ROC'M . . . documents." He instead testified that "they either took it or they're stupid." Smead also testified that he had no evidence that the individual defendants "took the MOCRAT system with them to Rosendin." The context of the deposition testimony arguably suggests that Smead was referring to trade secret information. In an immediate followup question about "your job cost system," Smead answered: "Yeah, the

---

[3] We ignore the question of whether SASCO had a trade secret for purposes of the appeal. The trial court assumed without deciding that SASCO's computer program was a trade secret and we need not address this question in light of our disposition of the appeal. We also ignore, for the most part, evidence presented pertaining to the subjective bad faith of SASCO, as SASCO does not challenge the court's finding that it had subjective bad faith in bringing its claim.

whole thing's unique. I've had programmers and it's just SASCO's system." Smead was also asked whether he was "claiming in this case that" defendants did take ROC'M documents, and Smead responded, "Yes . . . they have to prove they didn't, why wouldn't they." SASCO's position with regard to this evidence is that (1) Smead was not testifying as a person most knowledgeable for SASCO; (2) there is no foundation for the conclusion that either Excel ROC'M documents or the MOCRAT system are related to SASCO's alleged trade secrets (a "proprietary" computer program); and (3) Smead was never specifically asked to identify SASCO's trade secrets.

Second, the individual defendants each submitted declarations attesting that they did not take any computer software with them when they left SASCO and that they did not provide Rosendin with any computer software from SASCO. They also declared that SASCO used an "off-the-shelf" computer software program known as the McCormick System, while Rosendin used an "off-the-shelf" computer software program known as the Accubid System. None of the individual defendants modified Rosendin's Accubid System or asked anyone else to modify it.

Third, Joe Martino, a manager for the general contractor on the Verizon Tustin Project, submitted a declaration. Martino attested to the following: (1) the Verizon Tustin Project was initially a $7.2 million project for which SASCO submitted a proposal; (2) SASCO did not obtain a written subcontract, did not receive an oral contract, and did not receive oral promises from the general contractor; (3) the scope of the Verizon Tustin Project was revised downward in November 2006 to a $5.6 million project; (4) Verizon instructed the general contractor to obtain competitive bids from subcontractors for all aspects of the project; (5) Martino contacted Rosendin and sought a bid from it along with other subcontractors, including SASCO; (6) SASCO's bid was the highest bid by far among several bidders; and (7) Rosendin received the subcontract because it was the lowest eligible bidder. SASCO's argument with regard to this evidence is that Martino's declaration, if relevant at all, pertains to damages (not misappropriation) and it was unnecessary for SASCO to establish damages to prove a trade secret misappropriation claim.

*Ruling*

The court granted defendants' motion for attorney fees and costs, awarding a total of $484,943.46, which represents a discount on the total attorney fees incurred due to the non-trade-secret causes of action pursued by SASCO. The court issued a lengthy written order in which it described the parties' respective positions, set forth the applicable law, and explained its reasons for finding in defendants' favor. Accepting for the sake of argument that SASCO's computer program was a trade secret, the court concluded there

was no evidence of misappropriation. Instead, SASCO sued defendants based on the *suspicion* that they must have misappropriated trade secrets because the individual defendants left the employ of SASCO to work for a competitor, Rosendin, which subsequently obtained the Verizon Tustin Project contract. The court specifically cited Smead's deposition testimony. The court faulted SASCO for not conducting a thorough investigation prior to filing suit (e.g., by asking knowledgeable individuals why SASCO did not obtain the contract or by conducting forensic tests to determine whether defendants took computer files). With regard to SASCO's subjective bad faith, the court pointed to SASCO's continued prosecution of the case without evidence to support its accusations, as well as SASCO's pursuit of other nonmeritorious lawsuits against the individual defendants simultaneously with the instant case.[4]

## DISCUSSION

Pursuant to the Uniform Trade Secrets Act (Civ. Code, § 3426 et seq.) (UTSA), " '[t]rade secret' means information . . . that: [¶] (1) Derives independent economic value, actual or potential, from not being generally known . . . and [¶] (2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." (Civ. Code, § 3426.1, subd. (d).) " 'Misappropriation' " under UTSA includes acquiring trade secrets through "improper means" or using trade secrets of another that were obtained "from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use . . . ." (Civ. Code, § 3426.1, subd. (b).) " 'Improper means' includes theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means. Reverse engineering or independent derivation alone shall not be considered improper means." (Civ. Code, § 3426.1, subd. (a).)

■ "If a claim of [trade secret] misappropriation is made in bad faith . . . the court may award reasonable attorney's fees and costs to the prevailing

---

[4] For instance, a federal district court awarded attorneys for Woodworth (and another individual not involved in the case before us) $568,573.32 in attorney fees and costs against SASCO. In applying a multiplier of 1.5 to the attorney fee award in this employee benefit dispute, the court observed: "Most importantly, the Court notes that Plaintiffs' summary judgment motion 'likely would have . . . ended the litigation over six . . . months ago if SASCO had not asserted belated offset claims based on unverified and inaccurate "evidence," and then relied on this "evidence" that SASCO's CEO, Larry Smead, literally . . . "dreamed up" to prolong this litigation and support SASCO's baseless offset claims.' [Citation.] Although SASCO points out that Mr. Smead's comment was simply a 'poor choice of words' [citation], the Court notes with some concern that there was ultimately very little evidence to support his offset claims. Moreover, there is evidence to suggest that SASCO 'attempted to wear down Plaintiffs with duplicative and costly satellite litigation in two separate forums. SASCO brought duplicative actions against both [plaintiffs] in an apparent effort to pummel them into submission by needlessly driving up their litigation costs.' "

party." (§ 3426.4.) ". . . UTSA does not define 'bad faith' as used in section 3426.4 . . . ." (*Gemini Aluminum Corp. v. California Custom Shapes, Inc.* (2002) 95 Cal.App.4th 1249, 1261 [116 Cal.Rptr.2d 358] (*Gemini*).) But courts have concluded that "bad faith" as used in section 3426.4 consists of both "objective speciousness of the plaintiff's claim . . . and . . . subjective bad faith in bringing or maintaining the claim." (*Gemini*, at p. 1262; see *FLIR Systems, Inc. v. Parrish* (2009) 174 Cal.App.4th 1270, 1275 [95 Cal.Rptr.3d 307] (*FLIR Systems*); *CRST Van Expedited, Inc. v. Werner Enterprises* (9th Cir. 2007) 479 F.3d 1099, 1111.)

"Section 3426.4 authorizes the trial court to award attorney fees as a deterrent to specious trade secret claims. [Citation.] Because the award is a sanction, a trial court has broad discretion in awarding fees." (*FLIR Systems, supra*, 174 Cal.App.4th at p. 1275.) An award of attorney fees "will not be overturned in the absence of a manifest abuse of discretion, a prejudicial error of law, or necessary findings not supported by substantial evidence." (*Yield Dynamics, Inc. v. TEA Systems Corp.* (2007) 154 Cal.App.4th 547, 577 [66 Cal.Rptr.3d 1].)

SASCO raises two arguments on appeal. First, SASCO asserts the court applied an incorrect legal standard for determining whether its misappropriation claim was objectively specious. Second, SASCO contends the court improperly relied on certain evidence in concluding that SASCO's claim was objectively specious. SASCO does not challenge the amount awarded, or the court's findings that defendants were prevailing parties and SASCO had subjective bad faith. Hence, we need not address these latter issues.

*Legal Standard for Whether a Claim Is Objectively Specious*

"Objective speciousness exists where the action superficially appears to have merit but there is a complete lack of evidence to support the claim." (*FLIR Systems, supra*, 174 Cal.App.4th at p. 1276.) In making its ruling, the court applied this rule to the record before it and concluded there was a complete lack of evidence supporting SASCO's allegations of trade secret misappropriation.

SASCO claims this rule of law is inappropriate for cases that are dismissed prior to trial and prior to the completion of discovery, particularly when the defendants have (allegedly) withheld discovery. According to SASCO, the court committed legal error by failing to look to Code of Civil Procedure section 128.7 in deciding whether SASCO's trade secret misappropriation claim was "objectively specious." Code of Civil Procedure section 128.7, subdivision (b), provides that when an attorney (or party representing itself) signs and submits a pleading, petition, or motion to the court, the attorney is

implicitly representing (among other things) that "[t]he allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery." Code of Civil Procedure section 128.7, subdivision (c), authorizes courts to impose sanctions against "attorneys, law firms, or parties" after a determination that "subdivision (b) has been violated . . . ." SASCO asserts that it should not be held to an "objective speciousness" standard that requires actual evidence of misappropriation, but instead should be held to the standard of Code of Civil Procedure section 128.7 in its initiation and pursuit of the case prior to dismissal.

■ We decline to adopt SASCO's reasoning. For one, it simply makes no sense as a matter of statutory interpretation to insert a general pleading abuse statute applicable to attorneys or others signing pleadings and motions (Code Civ. Proc., § 128.7) into a Civil Code section limited to the recovery of attorney fees and costs in trade secret misappropriation claims (§ 3426.4). These are separate remedies provided by the Legislature to address separate concerns via separate procedural mechanisms. There is no reason to import the statutory language of Code of Civil Procedure section 128.7 into the meaning of "bad faith" as used in section 3426.4. (See *CytoDyn of New Mexico, Inc. v. Amerimmune Pharmaceuticals, Inc.* (2008) 160 Cal.App.4th 288, 298–299 [72 Cal.Rptr.3d 600] [identifying Code Civ. Proc., § 128.7 and § 3426.4 as separate, unrelated statutory provisions in context of rejecting trial court's award of attorney fees to defendant under authority of § 3426.4].)

Second, published cases have explicitly rejected arguments that "bad faith" under section 3426.4 should be determined by applying the standard of "frivolousness" set forth in Code of Civil Procedure section 128.5 (a sanctions statute applicable to actions commenced prior to Dec. 31, 1994). (*FLIR Systems, supra*, 174 Cal.App.4th at p. 1276; *Gemini, supra*, 95 Cal.App.4th at p. 1262.) "[I]n enacting section 3426.4 the Legislature was concerned with curbing 'specious' actions for misappropriation of trade secrets, and such actions may superficially appear to have merit. We . . . conclude that 'bad faith' for purposes of section 3426.4 requires objective speciousness of the plaintiff's claim, as opposed to frivolousness, and its subjective bad faith in bringing or maintaining the claim." (*Gemini*, at p. 1262.) These cases do not specifically address Code of Civil Procedure section 128.7. But the broader implication of their rejection of Code of Civil Procedure section 128.5 as the test for objective "bad faith" is that courts should concern themselves with applying the "bad faith" standard of section 3426.4 (in light of the purposes of the UTSA) rather than looking to nonapplicable sanctions statutes.

■ Finally, SASCO's position ignores the role of the *subjective* element of "bad faith" under section 3426.4.[5] Subjective bad faith under section 3426.4 means the action was commenced or continued for an improper purpose, such as harassment, delay, or to thwart competition. (See *FLIR Systems, supra*, 174 Cal.App.4th at p. 1278; *Gemini, supra*, 95 Cal.App.4th at pp. 1263–1264.) The absence of evidence alone, even after discovery, does not support a finding of subjective bad faith. (Cf. *Daniels v. Robbins* (2010) 182 Cal.App.4th 204, 225 [105 Cal.Rptr.3d 683] [in malicious prosecution context, lack of evidence on its own, even after discovery process, does not support finding of malice].)

Usually, the phrase "bad faith" refers *solely* to a party's subjective mental state. (See *Smith v. Selma Community Hospital* (2010) 188 Cal.App.4th 1, 34–35 [115 Cal.Rptr.3d 416].) Although neither of the parties do so, it might be posited that the proper interpretation of section 3426.4 is that a prevailing defendant may recover its attorney fees if the plaintiff pursued an action with subjective bad faith, regardless of whether there was some evidence supporting plaintiff's contentions. Prior courts, however, have opted to include an "objective speciousness" element in section 3426.4, thereby limiting a defendant's opportunity to recover attorney fees to cases that are both objectively specious and subjectively brought in bad faith.

■ This plaintiff friendly view of section 3426.4 "bad faith" should not be further watered down to preclude attorney fees when a plaintiff brings a trade secret misappropriation action (1) for an improper purpose (subjective bad faith); (2) without any evidence (objective bad faith); simply because (3) *objectively* speaking, it appeared at the time of the filing of the action some evidence would be obtained in discovery that would support a misappropriation claim. Focusing on this third question does not provide the protection against specious trade secret claims that section 3426.4 was designed to ensure. When an employee entrusted with trade secrets departs to work for a competitor, a reasonable observer might consider it likely that discovery will unearth at least some evidentiary support (if not a winning case) for allegations of trade secret misappropriation. This objective assessment of a difficult predictive problem has nothing to do with the good faith or bad faith of the plaintiff, which is, after all, what the statute instructs courts to examine.

In light of the foregoing discussion, we reject SASCO's argument that defendants' alleged discovery misconduct should bear on the court's *objective*

---

[5] Code of Civil Procedure section 128.7 does not necessarily include a subjective element. "To recover sanctions under Code of Civil Procedure section 128.7, the movant need not show subjective bad faith, but instead that the challenged conduct was ' "objectively unreasonable." ' " (*In re Marriage of Corona* (2009) 172 Cal.App.4th 1205, 1225, fn. 7 [92 Cal.Rptr.3d 17].)

analysis of the evidentiary record. In determining whether there is a complete lack of evidence, a court should not ask *why* there is a complete lack of evidence. SASCO certainly was entitled to argue that it believed in its case and dismissed the action solely for "business reasons" following discovery intransigence by defendants. But this argument is applicable solely to the subjective prong of the "bad faith" analysis. In other words, the court would have been entitled to conclude (1) the case was "objectively specious" because there was no evidence supporting SASCO's allegations and (2) SASCO did not have subjective bad faith because it brought the case solely to vindicate perceived violations of its trade secret rights, but was stymied in its efforts to do so by defendants' unfair discovery tactics. The court, of course, did not make this finding on the subjective element and SASCO did not argue on appeal that the court erred with regard to the subjective element.

*Was SASCO's Claim Objectively Specious?*

SASCO also posits that, even assuming the court applied the correct standard of objective speciousness, the court abused its discretion by concluding that SASCO's trade secret misappropriation claim was objectively specious.

SASCO mounts its attack by pointing to the limitations of various pieces of evidence (deposition testimony of Smead, declaration of Martino, and the lack of a computer forensics investigation by SASCO) that were cited by the court to support its conclusion that SASCO's claim was objectively specious. SASCO contends that the Smead deposition testimony did not pertain to its trade secrets, but rather to something else (what this something else consists of is not explained clearly by SASCO). SASCO· asserts that Martino's declaration does not prove that trade secrets were not misappropriated, but instead only proves that Rosendin provided a lower bid than SASCO (which could be consistent with trade secret theft). And SASCO claims that the lack of a forensics investigation is irrelevant.

█ SASCO's argument misses the point. There is no evidence in the record supporting the claim that defendant misappropriated SASCO's trade secrets. Defendants were not required to conclusively prove a negative (i.e., that they did not steal SASCO's trade secrets). Instead, under the "objectively specious" standard, it was enough for defendants to point to the absence of evidence of misappropriation in the record. It was perfectly legitimate for Rosendin to hire the individual defendants and for the individual defendants to leave the employ of SASCO in favor of a competitor, Rosendin. (See *Reeves v. Hanlon* (2004) 33 Cal.4th 1140, 1149 [17 Cal.Rptr.3d 289, 95 P.3d 513].) Speculation that the individual employees must have taken trade secrets from SASCO based on their decision to change employers does not

constitute evidence of misappropriation. Nor does speculation that Rosendin's success in obtaining the Verizon Tustin contract was based on the theft of trade secrets constitute evidence of misappropriation. (*King v. Pacific Vitamin Corp.* (1967) 256 Cal.App.2d 841, 850 [64 Cal.Rptr. 486] [Intent to "take away some of plaintiff's business did not prove their actions to be wrongful. There is virtue in fair competition in business even though a competitor is hurt."].) Having reviewed the parties' respective papers, the court found there was no evidence of trade secret misappropriation. The Smead deposition, the declaration of Martino, and the lack of forensic evidence supported the court's findings. Based on our review of the entire record, we conclude the court did not abuse its discretion. It does not matter that the evidence specifically cited by the court did not conclusively prove the absence of misappropriation.

*Attorney Fees on Appeal*

■ We agree with defendants that they are entitled to reasonable attorney fees incurred on appeal. Defendants are "the prevailing part[ies] on appeal, and thus [they] are entitled to fees under section 3426.4. 'Although this court has the power to fix attorney fees on appeal, the better practice is to have the trial court determine such fees.' " (*Gemini, supra*, 95 Cal.App.4th at p. 1264.)

## DISPOSITION

The postjudgment order awarding attorney fees is affirmed. Defendants shall recover attorney fees and costs incurred on appeal.

Rylaarsdam, Acting P. J., and Aronson, J., concurred.

A petition for a rehearing was denied August 7, 2012, and the opinion was modified to read as printed above.