Filed 12/19/22  SASCO vo CSI Electrical Contractors, Inc. 2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| SASCO,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>CSI ELECTRICAL CONTRACTORS, INC., et al.,<br><br>    Defendants and Respondents. | B322686<br><br>(Santa Clara Superior Ct. No. 19CV352165) |

APPEAL from an order of the Superior Court of Santa Clara County, Cynthia C. Lie, Judge.  Affirmed.

Murchison & Cumming, Jean A. Dalmore, Matthew E. Voss for Plaintiff and Appellant.

Payne & Fears, Daniel F. Fears, Benjamin A. Nix, Damon Rubin for Defendants and Respondents CSI Electrical Contractors, Andrew Soffa, Troy Carlton and David Weir.

# INTRODUCTION

SASCO appeals a sanctions order under Civil Code section 3426.4 (section 3426.4), part of the Uniform Trade Secrets Act, awarding $299,647.50 in attorney fees as a sanction for bringing a claim of misappropriation of trade secrets in bad faith.  SASCO sued its former employees Andrew Soffa, David Weir, and Troy Carlton, as well as their new employer, CSI Electrical Contractors, Inc., alleging that defendants improperly convinced seven of SASCO's employees to move to CSI. SASCO alleged the defendants used confidential and trade secret information, including employee salary and benefit information, to solicit these employees.  After months of evading discovery, SASCO dismissed all defendants except Soffa from the case, dropped its misappropriation of trade secrets cause of action, and alleged that Soffa breached his contracts with SASCO by attempting to entice certain employees away from SASCO.  Defendants then moved for attorney fees under section 3426.4 as a sanction for bringing the misappropriation of trade secrets cause of action in bad faith.  The superior court granted the motion, and SASCO appealed.

We affirm.  SASCO does not challenge the superior court's finding that the misappropriation claim was objectively specious, but asserts the court erred in finding that SASCO acted with subjective bad faith. SASCO's actions in litigation and its own statements demonstrate subjective bad faith, and therefore the court's conclusion was not erroneous.  SASCO also contends the court erred in failing to apportion the attorney fees between the defense of the misappropriation cause of action and other causes of action.  We find no abuse of discretion in the court's conclusion

that the legal and factual issues were intertwined, and therefore apportionment was not warranted.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. Complaint

SASCO and CSI are industrial electrical contractors. Soffa was the CEO of SASCO; he left SASCO in July 2018. Weir was vice president of SASCO's Northern California office; he left SASCO in March 2019. Carlton was a senior group president in SASCO's Northern California office; he left SASCO in March 2019. Soffa, Weir, and Carlton went to work for CSI after leaving SASCO.

In July 2019, SASCO filed a complaint against CSI, Soffa, Weir, and Carlton alleging "an ongoing, premeditated raid of SASCO's officers, employees, and clients" from SASCO's Northern California office. SASCO alleged that in March 2019, defendants "orchestrated . . . the defection to CSI of a majority of SASCO's top managers and executives . . ., diverting significant sums of client revenue to CSI." It alleged that defendants "planned and orchestrated the Raid" "to inflict the greatest amount of damage on SASCO."

Under the heading "SASCO's Trade Secrets," SASCO alleged that "information pertaining to SASCO's employees, including their salaries, pay structure, benefits provided, bonuses and similar financial information is confidential and proprietary. This information is carefully safeguarded by SASCO, and would be of great value to any competitor of SASCO." It also alleged, "Among the types of additional information SASCO considers to be its trade secrets and confidential and proprietary information is, without limitation, . . . the salaries and benefits SASCO provides to its employees. The disclosure of these trade secrets

3

and other confidential and proprietary information would put SASCO at a competitive disadvantage, as this information is only valuable to the extent SASCO is able to maintain its secrecy." SASCO further alleged that the individual defendants had access to these trade secrets, and "only received SASCO's confidential and trade secret information on the condition of their promises to protect that information set forth in" certain employment-related agreements, including the Buy-Sell Agreement and the Employee Manual and Confidentiality Agreement. SASCO alleged, "On information and belief, the Individual Defendants used their knowledge of SASCO's pay structure, salary information, benefit structure, in combination with its representations that it would be taking over SASCO's Northern California work, to improperly solicit SASCO employees, who had no intention of leaving SASCO until contacted by Defendants."

SASCO alleged eight causes of action: breach of contract, breach of the covenant of good faith and fair dealing, unfair competition, intentional interference with prospective economic advantage, misappropriation of trade secrets, breach of fiduciary duty, breach of the duty of loyalty, and conspiracy. Several causes of action included allegations that defendants used confidential and trade secret information in soliciting SASCO employees. For example, SASCO alleged the individual defendants breached their respective contracts by "violating the covenant not to solicit by soliciting SASCO employees for positions at CSI." The trade secrets SASCO alleged defendants misappropriated included "the identities, salaries and benefit information for SASCO employees." Other causes of action alleged defendants' "raid" of SASCO employees constituted unfair

4

competition, interference with prospective economic advantage, and breaches of fiduciary duty and the duty of loyalty.

## B. Discovery motions and dismissals

CSI filed several motions to compel further discovery responses. It served discovery requests on SASCO in August 2019, and after SASCO served only objections and asked for multiple extensions, CSI filed motions to compel further responses in December 2019. SASCO served its first substantive responses to the discovery requests in February 2020, along with its opposition to the motion to compel. The court denied CSI's motions as moot, but imposed a sanction of $3,900 on SASCO.

CSI filed motions to compel again in June 2020, asserting that SASCO's discovery responses "were evasive, incomplete and were served without producing a single responsive document." CSI stated that despite months of attempts to resolve the ongoing discovery dispute, SASCO still had not served supplemental responses or any responsive documents.

On July 22, 2020, SASCO filed a request for dismissal without prejudice of its cause of action for misappropriation of trade secrets. Dismissal was entered the same day.

The hearing on CSI's discovery motions was held on September 3, 2020, and the court took the matter under submission. In November 2020, before the court ruled on CSI's discovery motions, SASCO moved for leave to file a first amended complaint (FAC). SASCO stated that its intent was to "reduce[] the scope of the dispute and remove[] claims against" CSI, Weir, and Carlton.

The court issued a written ruling granting CSI's discovery motions on December 14, 2020. The court noted that SASCO's cause of action for misappropriation of trade secrets had been

dismissed, and SASCO had argued that the discovery directed at that cause of action therefore was not relevant to the remainder of the action. The court rejected this argument, stating that the dismissal "still leaves open the possibility of asserting the same allegations in support of the other causes of action[ ]. [CSI] points out that [SASCO] does exactly this with respect to the first cause of action for breach of contract." The court therefore found that the requests "are not overbroad and are relevant to the subject matter involved in the pending action." The court also found that "a plurality" of SASCO's interrogatory responses "fail to provide anything remotely approaching substantive information," and were "patently evasive." The court granted the motions, ordered SASCO to provide substantive discovery responses and documents, and imposed sanctions in the amount of $12,500.

On January 7, 2021, SASCO dismissed CSI, Weir, and Carlton from the case. The FAC, filed on January 29, 2021, asserted three causes of action against Soffa alone: breach of fiduciary duty, breach of the duty of loyalty, and breach of contract. SASCO alleged that while on a company-sponsored fishing trip, Soffa told employees Ron Watanabe and Matt Metoyer that he was leaving SASCO and encouraged the two to join him at CSI. SASCO alleged that Soffa's actions violated the Buy-Sell Agreement and the Employee Manual and Confidentiality Agreement.

## C. Motion for attorney fees

### 1. *Motion*

In March 2020, defendants filed a motion seeking $437,045 in attorney fees under section 3426.4, which states in part, "If a claim of misappropriation is made in bad faith, . . . the court may

6

award reasonable attorney's fees and costs to the prevailing party." "'[B]ad faith' as used in section 3426.4 consists of both 'objective speciousness of the plaintiff's claim . . . and [ ] subjective bad faith in bringing or maintaining the claim.'" (*SASCO v. Rosendin Electric, Inc.* (2012) 207 Cal.App.4th 837, 845 (*Rosendin Electric*), quoting *Gemini Aluminum Corp. v. California Custom Shapes, Inc.* (2002) 95 Cal.App.4th 1249, 1262 (*Gemini*).)

Defendants asserted that SASCO's dismissed misappropriation claim "was brought and maintained in bad faith because it was objectively specious given that there is no evidence substantiating it," and SASCO "had subjective bad faith . . . because it wanted to harass and punish the individual Defendants for leaving SASCO and CSI for hiring them." They also argued that SASCO's evasion in discovery drove up defendants' attorney fees.

Defendants argued that SASCO never provided any evidence of misappropriation of trade secrets. They asserted that CSI served discovery requests seeking information about SASCO's trade secret claims more than 19 months earlier, and "despite two sets of motions to compel, two orders granting discovery sanctions (totaling $16,400), and an Order . . . that it give proper, complete responses," SASCO still never produced any discovery responses supporting its claim. Defendants also noted that although the court ordered SASCO to pay $12,500 in sanctions by January 11, SASCO had not paid the sanction, instead telling CSI to seek it in an enforcement action. Defendants stated that SASCO also refused to make its witnesses available for depositions.

7

Defendants argued that SASCO had a pattern of suing former employees, citing *Rosendin Electric, supra,* 207 Cal.App.4th 837, in which SASCO sued former employees and their new employer for misappropriation of trade secrets, dismissed the action while a motion for summary judgment was pending, and was required to pay attorney fees under section 3426.4. The Court of Appeal affirmed in that case the superior court's finding that SASCO's misappropriation claim was objectively specious. (*Rosendin Electric, supra*, 207 Cal.App.4th at pp. 848-849.)

In support of their motion, defendants filed over 550 pages of evidence, including declarations from defendants and their counsel, itemized attorney fee statements, CSI's discovery requests, some of SASCO's discovery responses, the court's orders on the discovery motions, deposition notices, and correspondence between counsel. In Soffa's declaration, he discussed conversations with SASCO's chairman of the board, Larry Smead, who "on several occasions . . . expressed hostility towards former high-level employees who had left SASCO to work for competitors, even if they had done nothing wrong. Mr. Smead shared with me his approach to litigation. On several occasions between 2012 and when I left SASCO in 2018, Smead told me that he does not care how much money he spends on lawsuits as long as his opponents, including former employees and competitors, are also spending money, and that he attempts to outspend his opponents in litigation to wear them down. During these conversations, Mr. Smead also told me that he is willing to spend money on litigation against former employees and the companies that hired them to make them regret their decision to leave SASCO and to hire SASCO's former employees. Mr. Smead

8

makes the decision on SASCO filing lawsuits against former employees and the companies that hired them."

2. *Opposition*

SASCO opposed defendants' motion, asserting that its misappropriation claim was not made in bad faith. Rather, "[t]he impetus of this case is Soffa'[s] breach of loyalty," in that he "solicited two high level SASCO employees while he was still SASCO's CEO," and "used his knowledge of their confidential compensation as part of the solicitation."

SASCO also asserted, "Carlton had a company phone that contained his communications and emails. Carlton smashed the device before he left. [Citation.] The bizarre and outrageous conduct appeared to be an attempt to destroy incriminating evidence. In early February 2020, when SASCO determined that the memory chip had been destroyed and that no data could be retrieved, it withdrew its claim for misappropriation of trade secrets."

SASCO contended that nine employees left SASCO to work for CSI, and "SASCO believed that Defendants solicited specific SASCO's employees based on their knowledge of these employees that was gained during Defendants' interactions with these employees" and "using the false rumors Defendants spread about SASCO closing its Northern California office."

SASCO stated that a "trade secret is different than confidential information," and asserted that in its discovery responses "SASCO only identified salaries, wages, benefits," and other employee information as "confidential information" rather than trade secrets. SASCO asserted that it was no longer contending that Soffa used trade secrets, and argued that

9

"Defendants refuse to accept that the Misappropriation Claim is long gone."

SASCO also argued that any attorney fee award must be apportioned to only the trade secret claim, and the causes of action were not so intertwined that apportionment was impossible. It also asserted that defendants were not entitled to fees incurred after February 2020, when SASCO served discovery responses stating that the misappropriation of trade secrets cause of action was withdrawn. SASCO also argued that defendants sought "improper and grossly inflated fees," including nearly $100,000 for the motions to compel, even though the court had already awarded fees for those motions. It further argued that "[t]he entire litigation was limited as the Defendants did not take or defend a single deposition, or answer a single interrogatory or other written discovery directed towards the 'Misappropriation Claim.'"

SASCO submitted over 300 pages of evidence in support of its opposition, including declarations of several SASCO employees, a declaration of SASCO's counsel, some of SASCO's discovery responses, and some of the contracts that served as the basis of SASCO's claims. SASCO also objected to some of defendants' evidence.

Defendants filed a reply in support of their motion, responded to SASCO's objections, and filed objections to some of SASCO's evidence.

3. *Hearing and ruling*

At the hearing, the court asked defendants' counsel to begin and stated, "I'm going to need to ask you to keep this brief. I have read your voluminous pleadings, although I'm not going to pretend to have digested all of the nuances of all the exhibits to

10

them."  After defense counsel argued, the court turned to SASCO's counsel and asked some questions, including "[T]o the extent that you have argued that it's relevant that SASCO took a very streamlined approach to the litigation, didn't propound much in the way of discovery, why should that be relevant to the court when Mr. Smead's view, as the apex employee of SASCO, is that it's the defendants who have to prove that they didn't misappropriate?"  SASCO's counsel stated, "I'm not sure we have taken that position in our papers, that it's their burden."  The court responded, "Not in your papers.  It's in his deposition testimony as summarized in *Rosendin Electric*."  SASCO's counsel argued that *Rosendin Electric* was from "a decade ago" and there had been no depositions in this case.  SASCO's counsel also stated that the streamlined litigation argument "really went to the amount of fees that the defense is requesting, which . . . we thought were inappropriate."  The court took the matter under submission.

The court issued a 14-page written order granting the motion and awarding defendants a reduced amount of attorney fees: $299,647.50.  Discussing SASCO's subjective bad faith, the court stated, "This is not SASCO's first occasion of defending allegations of bad faith under section 3426.4, and Defendants make a persuasive case under Evidence Code section 1101, subdivision (b), of SASCO's common plan or scheme of malicious prosecution of its former employees and competitors who hire them.  But even disregarding SASCO's effective concession of subjective bad faith in *Rosendin Electric* and similar findings as to SASCO's pursuit of other former employees," defendants presented evidence that Smead told Soffa he is "willing to spend money on litigation against former employees and the companies

11

that hired them to make them regret their decision to leave SASCO and hire SASCO'[s] former employees." The court continued, "SASCO's election to not rebut Soffa's account of Smead's express admission is itself a tacit admission of a pattern and practice of harassment. (Cf. Evid. Code, § 1221.) SASCO's conduct of this litigation and particularly its approach to the trade secret allegations circumstantially confirms the inference of subjective bad faith."

The court continued, "SASCO expressly concedes that it pursued its objectively specious misappropriation cause of action for the purpose of thwarting competition, which under *Rosendin Electric* will satisfy subjective bad faith." The court stated, "The minimal competent evidence proffered by SASCO suggests—at best—that SASCO entertained a good-faith belief in the merits of its claim that Defendant Andrew Soffa breached his fiduciary duty to SASCO by unsuccessfully soliciting a single employee, Ron Watanabe, during an Alaska fishing trip hosted by a client, when Soffa was still SASCO's chief executive officer. But as Defendants correctly note, good faith in bringing suit against Soffa for thus allegedly breaching his fiduciary duties or employment agreements does nothing to immunize SASCO from liability under section 3426.4 for its objectively specious claim that Defendants misappropriated SASCO's trade secrets."

The court also stated, "As for defendant Carlton's mobile phone, SASCO's insinuation that Carlton's smashed phone was in some manner responsible for its failure to produce evidence, or [was] itself evidence of its good faith is specious. As a threshold matter, nothing in the record suggests what, if anything, SASCO believed in good faith it might discover on the phone itself as it existed prior to the termination of Carlton's employment . . . ." In

12

a footnote discussing the phone, the court stated, "SASCO's prior bad-faith tactics are relevant under Evidence Code section 1101, subdivision (b), not only as evidence of a common scheme or modus operandi, but also as evidence tending to establish SASCO's motive to either fabricate helpful evidence or obstruct access to damaging evidence." The court also referred to "SASCO's refusals to comply with discovery orders,[ ] its belated dismissal of the [trade secret] claims, and its refusal to produce Larry Smead, the one SASCO principal who decides whether to sue," and the fact that "SASCO has never in this case identified its purported trade secrets."

The court rejected SASCO's argument that the fees should be apportioned by cause of action or limited to the time before SASCO stated that it was withdrawing its misappropriation claim. The court grouped the misappropriation cause of action with "the unfair competition, intentional interference and conspiracy causes of action that SASCO does not (and cannot) seriously dispute were derivative thereof." The court pointed out that even "the allegations of the [FAC] are replete with express references to SASCO's purported trade secrets," noting that the contract Soffa allegedly breached was the same contract that allegedly protected employment information as trade secrets. The court noted that SASCO employed a "self-servingly fluid definition and redefinition of terms to suit the occasion. It is SASCO that has long insisted that the 'confidential and proprietary information' it continues to allege that Soffa used is among 'SASCO's Trade Secrets'" as that term was defined in the original complaint. "Having staked out that expansive definition of its trade secrets, SASCO is ill-equipped to retroactively redefine terms to suggest that Defendants' defense of the trade

13

secrets cause of action was not inextricably intertwined with its allegations of unlawful solicitation."

The court then discussed the reasonableness of defendants' requested fees, and deducted $120,997.50 from the requested amount due to duplicative billing and work that the court determined was not necessary to the litigation. The court ordered SASCO to pay a total of $299,647.50 in attorney fees "as a sanction for bringing in subjective bad faith its objectively specious claim of misappropriation of trade secrets."

SASCO filed a motion seeking "correction" of the fees order, asserting that "the FAC is not 'replete with express references to SASCO's trade secrets'" as the court stated in its order. Meanwhile, however, SASCO's counsel filed a motion to be relieved as counsel, citing irreconcilable differences with the client. The motion to withdraw was granted before the hearing on SASCO's motion for correction of the order, and SASCO did not appear at the hearing. The court set an Order to Show Cause (OSC) regarding SASCO's failure to appear at the hearing. SASCO did not appear at the OSC, so the court set a second OSC re: dismissal of the complaint. When SASCO did not appear at the second OSC, the court dismissed the case without prejudice. SASCO's new counsel later moved to vacate the dismissal, but the court denied the motion.

Meanwhile, SASCO timely appealed the attorney fees order, which is appealable under Code of Civil Procedure section 904.1, subdivision (a)(12).

## DISCUSSION

SASCO presents four claims of error: (1) the court erred in determining that SASCO's misappropriation claim was made in bad faith, (2) the court's comment at the hearing that it had not

14

"digested all of the nuances" of the voluminous exhibits constituted prejudicial error, (3) the court's references to SASCO's conduct in *Rosendin Electric* constituted improper use of character evidence, and (4) the court failed to properly apportion the attorney fees. We consider each contention.

"Section 3426.4 authorizes the trial court to award attorney fees as a deterrent to specious trade secret claims. [Citation.] Because the award is a sanction, a trial court has broad discretion in awarding fees." (*FLIR Systems, Inc. v. Parrish* (2009) 174 Cal.App.4th 1270, 1275 (*FLIR Systems*), citing *Gemini, supra,* 95 Cal.App.4th at p. 1262.) An award of attorney fees under section 3426.4 "'will not be overturned in the absence of a manifest abuse of discretion, a prejudicial error of law, or necessary findings not supported by substantial evidence.'" (*Rosendin Electric, supra*, 207 Cal.App.4th at p. 845.)

## A. Subjective bad faith

"'[B]ad faith' for purposes of section 3426.4 requires objective speciousness of the plaintiff's claim, . . . [and] subjective bad faith in bringing or maintaining the claim." (*Gemini, supra*, 95 Cal.App.4th at p. 1262.) SASCO does not challenge the court's finding that its misappropriation claim was objectively specious. Rather, SASCO argues only that it did not have subjective bad faith in bringing and maintaining its misappropriation of trade secrets claim.

"Subjective bad faith under section 3426.4 means the action was commenced or continued for an improper purpose, such as harassment, delay, or to thwart competition." (*Rosendin Electric, supra*, 207 Cal.App.4th at p. 847.) "Subjective bad faith may be inferred by evidence that appellants intended to cause unnecessary delay, filed the action to harass respondents, or

15

harbored an improper motive." (*FLIR Systems, supra*, 174 Cal.App.4th at p. 1278.) "On appeal from such an order, the appellant has an 'uphill battle' and must overcome both the 'sufficiency of evidence' rule and the 'abuse of discretion' rule." (*Id.* at p. 1275.)

SASCO makes no effort to argue that the superior court's ruling was unsupported by the evidence. Rather, SASCO argues on appeal, as it did below, that it "filed this lawsuit merely to enforce anti-solicitation provisions in its contracts with former employees and defend its Northern California office against Respondent CSI's aggressive and incessant raiding and to protect its employees." As the superior court pointed out in its order, because SASCO stated that it was attempting to "defend" against CSI's "raiding," SASCO has "expressly concede[d] that it pursued its objectively specious misappropriation cause of action for the purpose of thwarting competition, which under *Rosendin Electric* will satisfy subjective bad faith." SASCO does not address this finding, nor offer any suggestion that it constituted an abuse of discretion. This concession alone is sufficient to support the court's finding of subjective bad faith.

Even considering SASCO's additional contentions arguendo, the court did not abuse its discretion and its findings are supported by substantial evidence. SASCO asserts that the "litigation was limited, as [defendants] did not take or defend any depositions, or respond to any interrogatories or other written discovery directed toward the misappropriation claim that was alleged in the Complaint." However, neither section 3426.4 nor the relevant case law holds that fees are warranted only if the litigation reaches a certain level of complexity. Moreover, the litigation was not limited, in part because SASCO's evasive

16

discovery required CSI to file multiple rounds of motions to compel. SASCO waited until the opposition on the first round of discovery motions was due before filing further discovery responses, and the court found those responses "fail[ed] to provide anything remotely approaching substantive information," and were "patently evasive." SASCO also does not dispute defendants' argument that it refused to make witnesses available for depositions. SASCO's repeated evasion and delay tactics suggest SASCO was not litigating in good faith.

SASCO also argues that the superior court improperly referenced a letter sent by defense counsel to SASCO's counsel early in the case, in which defense counsel challenged SASCO's ability to prove its misappropriation of trade secrets claim, and compared the case to *Rosendin Electric* and another case in which a court awarded attorney fees against SASCO. SASCO did not respond to the letter. The court noted in its order that "'"[b]ad faith may be inferred where the specific shortcomings of the case are identified by opposing counsel, and the decision is made to go forward despite the inability to respond to the arguments raised."'" (*FLIR Systems, supra*, 174 Cal.App.4th at p. 1283, quoting *Gemini, supra*, 95 Cal.App.4th at p. 1264.)

SASCO argues that its failure to respond to defense counsel's letter is not evidence that it knew its allegations were groundless. However, as the court recognized, lack of a response to the letter was only one piece of circumstantial evidence among many. The court also noted that SASCO did not dispute that Smead told Soffa that he attempts to outspend opponents in litigation to wear them down. In addition, the court observed that there was a lack of evidence that SASCO acted in good faith, a lack of evidence regarding what SASCO expected to find on

17

Carlton's phone, and SASCO only offered a "belated and evasive response to demands for specification of the trade secrets at issue."  The court's conclusion that the totality of the evidence supported a finding of subjective bad faith was not an abuse of discretion.

## B.    The nuances of the exhibits

SASCO next argues that the court erred by ruling on the motion after stating to counsel at the hearing, "I have read your voluminous pleadings, although I'm not going to pretend to have digested all of the nuances of all the exhibits to them."  SASCO asserts, "It is prejudicial error for the trial court to make a ruling on the Motion without understanding the exhibits filed in support of and in opposition thereto."

As defendants correctly point out, the court did not issue its written ruling until three months after the motion hearing. Nothing in the record suggests the court failed to understand the evidence by the time the court ruled on the motion.  In its two-paragraph argument on this issue, SASCO does not identify any exhibits it contends the court misunderstood, or cite any portion of the court's order suggesting that important evidence was overlooked. SASCO also does not articulate how the court's interpretation of the evidence was incorrect or prejudicial.

A superior court ruling is presumed to be correct, and "the burden is on an appellant to demonstrate, on the basis of the record presented to the appellate court, that the trial court committed an error that justifies reversal of the judgment." (*Jameson v. Desta* (2018) 5 Cal.5th 594, 609.)  Moreover, a reversible error occurs only when the appellant establishes that it is reasonably probable a result more favorable to the appellant would have been reached in the absence of the error.  (*Cassim v.*

18

*Allstate Ins. Co.* (2004) 33 Cal.4th 780, 800.) SASCO has failed to meet these burdens.

## C. SASCO's conduct in prior litigation

SASCO contends the superior court's "ruling on the motion also constitutes prejudicial error because it improperly references [SASCO's] alleged conduct in a prior lawsuit as having bearing on its conduct in this lawsuit." SASCO cites a discussion at the hearing in which the court referenced Smead's comment described in *Rosendin Electric*: "Smead was also asked whether he was 'claiming in this case that' defendants did take [certain] documents, and Smead responded, 'Yes . . . they have to prove they didn't, why wouldn't they.'" (*Rosendin Electric, supra*, 207 Cal.App.4th at p. 843.) At the hearing here, the court referenced this statement when it asked SASCO's counsel, "[T]o the extent that you have argued that it's relevant that SASCO took a very streamlined approach to the litigation, didn't propound much in the way of discovery, why should that be relevant to the court when Mr. Smead's view, as the apex employee of SASCO, is that it's the defendants who have to prove that they didn't misappropriate?"

SASCO argues that the court "considered such evidence as if [SASCO] was taking the position in this case that the burden is on [defendants] to prove they didn't misappropriate." The record does not support this contention, and it does not constitute a valid argument of error. First, the court's comment was posed to SASCO's counsel as a question; it was not cited as a basis for any ruling. Second, "'[a] judge's comments in oral argument may never be used to impeach the final order, however valuable to illustrate the court's theory they might be under some

19

circumstances.'" (*Silverado Modjeska Recreation & Park Dist. v. County of Orange* (2011) 197 Cal.App.4th 282, 300.)

SASCO asserts the also court erred in referring to SASCO's litigation history in its written order, arguing that such evidence violates Evidence Code section 1101, pertaining to character evidence. It asserts that SASCO's "prior, alleged bad acts referenced in the *Rosendin Electric* case (including [SASCO's] alleged concession of bad faith) are not admissible to show a common plan or scheme . . . in the instant case."

SASCO has not preserved this issue for appeal. Although it filed written objections to some of defendants' evidence, it did not object to any discussion of the *Rosendin Electric* case or SASCO's other litigations as inadmissible under Evidence Code section 1101. A party must make a timely and specific objection to the erroneous admission of evidence in order to preserve the error for appeal. (Evid. Code, § 353.)

Moreover, even assuming the court's reference to *Rosendin Electric* and other litigation was erroneous, any error was harmless. The court referenced *Rosendin Electric* and other litigation referenced in that opinion, and stated, "But even disregarding SASCO's effective concession of subjective bad faith in *Rosendin Electric* and similar findings as to SASCO's pursuit of other former employees," Smead's statement to Soffa about his litigation strategy of outspending and wearing down opponents "is itself a tacit admission of a pattern and practice of harassment." Because the court expressly relied on evidence independent of *Rosendin Electric*, SASCO cannot show that the court's reference to that case, even if erroneous, was prejudicial. (See *Cassim v. Allstate Ins. Co.*, *supra*, 33 Cal.4th at p. 800.)

**D.      Apportionment**

SASCO contends the superior court awarded excessive attorney fees to defendants because the fees "should have been apportioned to work performed solely on defending the misappropriation claim alleged in the Complaint."  We find no error.

"When a cause of action for which attorney fees are provided by statute is joined with other causes of action for which attorney fees are not permitted, the prevailing party may recover only on the statutory cause of action.  However, the joinder of causes of action should not dilute the right to attorney fees. Such fees need not be apportioned when incurred for representation of an issue common to both a cause of action for which fees are permitted and one for which they are not.  All expenses incurred on the common issues qualify for an award.  [Citation.]  When the liability issues are so interrelated that it would have been impossible to separate them into claims for which attorney fees are properly awarded and claims for which they are not, then allocation is not required." (*Akins v. Enterprise Rent-A-Car Co. of San Francisco* (2000) 79 Cal.App.4th 1127, 1133 (*Akins*).)

SASCO focuses on the last sentence of the *Akins* quote above and argues, "To recover attorney fees for work that is intertwined, [defendants] must show that it is ***impossible*** to segregate the work between causes of action." (Emphasis in SASCO's brief.)  However, "impossible" is not the legal standard, and it is not an appellate court's role to determine if it was "possible" for the superior court to reach a different conclusion. To the contrary, as the court stated in *Akins*:  "The amount of an attorney fee to be awarded is a matter within the sound discretion of the trial court.  [Citation.]  The trial court is the best

21

judge of the value of professional services rendered in its court, and while its judgment is subject to our review, we will not disturb that determination unless we are convinced that it is clearly wrong." (*Akins, supra*, 79 Cal.App.4th at p. 1134; see also *Thompson Pacific Construction, Inc. v. City of Sunnyvale* (2007) 155 Cal.App.4th 525, 555 ["Where fees are authorized for some causes of action in a complaint but not for others, allocation is a matter within the trial court's discretion"].) We therefore review the superior court's determination as to a fee allocation for an abuse of discretion.

SASCO asserts the court's allocation decision was erroneous because a court could "segregate the Misappropriation Claim from the other seven causes of action in the original Complaint or from the FAC, where it is not even alleged. The other allegations in this action are separate and apart from the misappropriation of trade secrets claim, and pertain to [defendants'] use of confidential information, including salary and private information from employees' personnel files used to solicit [SASCO's] employees, as well as . . . Soffa's solicitation of [SASCO's] employees while he was still employed as [SASCO's] CEO."

As the superior court recognized, however, SASCO's argument that the issues were not intertwined relies on "SASCO's self-servingly fluid definition and redefinition of terms to suit the occasion." In the complaint, SASCO alleged its trade secrets included "information pertaining to SASCO's employees, including their salaries, pay structure, benefits provided, bonuses and similar financial information," and "the salaries and benefits SASCO provides to its employees." It alleged that the individual defendants used this information in soliciting SASCO employees,

22

and that by doing so they breached their contracts, including the Buy-Sell Agreement and Employee Manual and Confidentiality Agreement.

SASCO now argues, as it did below, that it did not assert misappropriation of trade secrets against Soffa in the FAC. However, SASCO alleged in the FAC that Soffa breached the Buy-Sell Agreement and Employee Manual and Confidentiality Agreement—the same agreements, according to the complaint, that protected SASCO's trade secrets and prohibited the use of confidential information to solicit SASCO employees. SASCO points to its response to an interrogatory by Soffa asking about allegations in the FAC, in which SASCO stated, "SASCO does not contend that Soffa used trade secret information," but that Soffa used "financial information such as the salaries, wages, benefits, dates of last raises, personal information contained in employee's personnel files" in soliciting the employees. This is the same employee information SASCO alleged constituted trade secrets in the complaint. Earlier in the litigation, the court also recognized that the misappropriation claim and the breach of contract claims substantially overlapped; it rejected SASCO's argument on that issue in its ruling on the motions to compel.

That SASCO deemed employee information a trade secret in the complaint and *not* a trade secret later in the litigation shows that the legal and factual issues were indeed intertwined. As the superior court stated, "Having staked out that expansive definition of its trade secrets [in the complaint], SASCO is ill-equipped to retroactively redefine terms to suggest that Defendants' defense of the trade secrets cause of action was not inextricably intertwined with its allegations of unlawful

23

solicitation" in the other causes of action in the complaint and in the FAC.  We agree.

"[A]ttorney fees need not be apportioned . . . where the claims involve either common factual issues or legal issues." (*Cruz v. Fusion Buffet, Inc.* (2020) 57 Cal.App.5th 221, 235.) Because the misappropriation of trade secrets allegations in the complaint substantially overlapped with the other allegations in the complaint and the FAC, the superior court did not abuse its discretion in finding that allocation was unwarranted.

## DISPOSITION

The order is affirmed.  Respondents are entitled to their costs on appeal.

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

COLLINS, ACTING P.J.

We concur:

CURREY, J.

STONE, J. *

---

* Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.